AUSA Freitas ✓
FILED ___ ENTERED
LOGGED ___ RECEIVED
MAR 11 2014
CLERK, AT GREENBELT
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREENBELT DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH ) | |
| OF THE FACEBOOK ACCOUNT ) | Crim. No 14-425 JKS |
| ) | |
| USER ID CTOLLAR48 ) | |
| CYNTHIA BRANDY TOLLAR ) | |
| ) | |

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Monique Pettett (your Affiant), of the United States Park Police being duly sworn under oath, do hereby depose and state:

1. Your Affiant, is a duly sworn member of the United States Park Police, and is currently assigned as a Detective in the Criminal Investigations Branch, Major Crimes Unit. Your Affiant has been a member of the United States Park Police for 12 years. During the course of that time your Affiant has investigated cases involving violent crime, narcotics, weapons, sexual assault, and child physical and sexual abuse.

2. The statements in this affidavit are based in part on my investigation of this matter and on information provided by other law enforcement agents and officers. The following facts and circumstances set forth in this affidavit are based on information also supplied to me by members of the law enforcement community, civilian witnesses, victims of these crimes, as well as my independent investigation. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of 18 U.S. Code § 1512 are presently located on the Facebook page listed in Attachment A and Attachment B.

3. Your Affiant makes this affidavit in support of applications for search warrants for information associated with certain Facebook accounts that is stored at the premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered at 151 University Avenue, Palo Alto, California, 94301. The information to be searched is described in the following paragraphs and in Attachment A1 and A2. This affidavit is made in support of applications for search warrants under Title 18, U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) which require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer operating the websites and e-mail, seeking evidence of violation of Title 18, U.S.C. § 1512.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, U.S.C. § 1512 have been committed by Cynthia Brandy TOLLAR a/k/a Facebook User Id ctollar48 a/k/a ctollar48@gmail.com. There is also probable cause to search the information described in Attachment A for evidence, fruits and instrumentalities of these crimes as described in Attachment B.

## STATUTORY AUTHORITY

5. Title 18 U.S.C. § 1512(b)(1) prohibits a person from using intimidation, threats, or corruptly persuading another person, or attempting to, or engaging in misleading conduct toward another person with the intent to influence, delay or prevent the testimony of any person in an official proceeding.

## SOCIAL NETWORKING SITES AND FACEBOOK

6. "Social networking" or "social network service" is a term used to describe applications or websites which focus on establishing networks or relationships among individual users based on interests or activities. These services typically consist of a personal online representation of

an individual, often referred to as a profile, a list of other individuals with which a person has interests or allowed to view their profile, and a variety of other capabilities, such as the upload and sharing of images and video. Newer capabilities allow access to the social networks via mobile devices such as cellular telephones and the upload of real-time information to an individual's profile. Most, if not all, of the social networks are accessible via the Internet and allow a member to contact other members via electronic mail (e-mail), instant messaging, or comments placed directly to a member's profile. Normally, information posted by individuals to their own or another individual's profiles are not vetted for accuracy or content.

7. Facebook (www.facebook.com) is an interactive, online, social networking site founded in 2004 with corporate offices located in Palo Alto, California, and, as of 09/02/2010, has over 500 million registered members based on information derived from the company's website.

8. Membership on Facebook is free to anyone. To create an account, an individual must provide a first and last name, e-mail address, account password, sex, and date of birth. Once this information is submitted, a security page requiring two words displayed on the website to be typed into an entry filed is accessed. Once the two words are entered, three optional steps are provided by Facebook: 1) import friends from existing e-mail account; 2) upload an image to the newly created profile to serve as the account's profile picture; and 3) complete basic profile information such as location, employer, and educational institutions. Once these steps are completed or by-passed, the profile page for the new account is available. Prior to the account being fully usable, a confirmation e-mail must be read and an associated hyperlink visited to confirm the validity of the e-mail used to open the account. This account activation via e-mail is the only information confirmed during the set-up process. The primary feature of Facebook is the creation of a social network via the use of a "Friends List." Other content located on an

individual's Facebook profile is determined by the member, with options to include images/photo albums and either pre-recorded or live-recorded videos. Facebook account members are added to an individual's "Friends List" via a request that can either be accepted or declined. Once a person is a "Friend," additional information on that member's profile may become visible based on the privacy settings for that particular account.

9. Privacy settings for individual Facebook accounts can be tailored to allow only certain individuals to view each area of a member's profile. These settings consist of "Everyone," "Friends of Friends," "only Friends," and "Customize." Within the "Customize" option, a member can further restrict who can or cannot view certain areas based on the previous privacy options or by individual account names / identifiers. The "Everyone" setting allows all members of Facebook to view a particular area, whereas the "Only Me" setting located in "Customize" would allow only the Facebook member to view content within their profile

10. Facebook also allows members to create groups that have a common interest, but are not necessarily on the particular "Friends List." The creation of a group requires a confirmed Facebook account via e-mail, a group name, a description of the group, and a tow tier category for what the group is interested in. Once this information is completed, group settings similar to the regular member account are accessible. These settings cover the upload of images, videos, links to other Internet locations, and general privacy/accessibility options. For the privacy/accessibility options, there are three settings: 1) Open- which allows anyone to join and to be able to invite others to join the group. Group information and content is viewable by all Facebook memb3ers and can be indexed by search engines; 2) Closed- which requires an administrator of the group to approve new membership requests, the group's description is viewable by anyone, but only members can see certain areas, such as photos and videos; and 3)

Secret- which requires an invitation by an existing member, the group itself will not appear in member profiles or search results, and information and content is only viewable by members. Once an individual becomes a member of either a Closed or Secret group, he/she is able to view all photos and videos posted by other members of that same group.

11. Upon creation of either a new Facebook user account or group, a unique numeric identifier is assigned. The unique numeric identifier does not change and is not re-assigned to other accounts or groups.

## INVESTIGATION

12. On Friday, October 18, 2013, United States Park Police District 4 officers received a telephone call from Prince Georges County Detective ("PGC") Reio regarding a sexual assault of a juvenile that occurred on the Beltsville Agricultural Research Center ("BARC"). Further investigation revealed that a nine year old female victim ("V-1") was in a vehicle with Kevin Robinson earlier in the day. Robinson drive V-1 to BARC where he used his key card to enter the building and take the victim to his office. In his office, he had V-1 remove her clothes and he attempted to vaginally penetrate her with his penis. When V-1 resisted, he continued to molest her, leaving a bite mark on her breast. After exiting the building with V-1, Robinson had her lick his penis in his vehicle on BARC property before driving her home where she reported the incident to her parents.

13. Further investigation substantiated V-1's statements about what occurred on October 18, 2013, including Robinson's DNA identified on the breasts of V-1, surveillance footage from BARC and text messages from the cellular phones of V-1's parents and Cynthia Tollar, Robinson's girlfriend.

14. On January 22, 2014, Robinson was indicted on one count of 18 U.S.C. § 2423(a), Transporting a Minor With Intent to Engage in Criminal Sexual Activity for his actions with V-1 on October 18, 2013.

15. On January 29, 2014 Robinson appeared in the United States District Court for the District of Maryland for a detention hearing. The Honorable Judge Charles B. Day ordered Robinson to have no contact with V-1, to include her parents, who were identified as witnesses in the case. Specifically, the Judge ordered that Robinson could have no contact, indirect or direct with V-1 and her parents. This included contact through Cynthia Tollar, Robinson's girlfriend.

16. On January 30, 2014 V-1's mother made contact with your Affiant and stated that Cynthia Tollar's ex-boyfriend, Norman Tyler, made contact with her via their house video telephone. V-1's mother stated that Tyler called at approximately 10:28 p.m., and told her that he moved in with Cynthia Tollar that day. Tyler then asked her why she was accusing Robinson of a crime and why he was still in jail. Tyler then told V-1's mother that he knew Robinson was out of jail. V-1's mother hung up the phone on Tyler.

17. On January 30, 2014 your Affiant responded to the residence of V-1 and took photographs of the home video phone containing the information from Tyler's call. Your Affiant viewed the information displayed to include the name, Norman Tyler, the telephone number of the telephone call, along with the date and time.

18. On January 31, 2014 your Affiant made telephone contact with Tollar. Your Affiant spoke with Tollar's daughter because Tollar is hearing impaired and this contact was made to Tollar's cell phone and not the video telephone Tollar uses to communicate. Your Affiant expressed to Tollar's daughter that Tollar and anyone in her family and her friends were not to

have any contact with V-1 or her parents. That contact included telephone calls, cell phone calls, video phone calls, text messages, e-mails, Facebook contact or any type of social media contact.

19. On February 1, 2014 V-1's mother contacted with your Affiant and stated that Tollar sent messages through her Facebook account stating that she was going to kill the victim's mother.

20. On February 1, 2014 your Affiant responded to the residence of V-1 and took photographs of the screen of the cell phone and IPad that showed the messages from Tollar. The first sets of messages viewed on the cell phone were sent to an Omdaz Brown, a former girlfriend of V-1's mother. The messages stated:

| | |
|---|---|
| Unknown to Brown: | Yes get big trouble |
| Brown to Unknown: | That too much problem |
| Unknown to Brown: | I know fuck fuck fuck fuck lamonda |
| Brown to Unknown: | Have ready my family and cousins |
| Unknown to Brown: | Lot can be hurt lamonda. And don't stop play game my friend old apt b einng se.[1] |

Your Affiant believes this message indicates Tollar's attempt to prepare to intimidate V-1's parent. V-1's parents and Tollar are hearing impaired and most of their friends and associates are in small community of other hearing impaired individuals. By communicating to others in this community, they are essentially communicating with V-1's parents given the close knit nature of their acquaintances within that community. This chat indicates Brown is ready to assist Tollar, who specifically references V-1's residence. Tollar has been told she cannot communicate with V-1 or V-1's parents, however, she is aware that V-1's parents have access to her Facebook profile and will be able to see these chats.

---

[1] Lamonda is one of V-1's parents. Your Affiant believes that the "apt benning" references Lamonda's apartment which is off Benning Road.

21. The second set of messages viewed on the IPad were sent to Yannick Johnson, a friend of V-1's mother. The messages stated:

| | |
|---|---|
| Unknown to Yannick: | Hi yannick |
| Yannick to Unknown: | Hi Cynthia |
| Uknown to Yannick: | Ok very me upset and very serious setup to me lamonda tell ppl deaf believe it will kill me state will come soon hide behind back eye out I don't know when |
| Yannick to Unknown: | Why lamonda want to kill u |
| Unknown to Yannick: | Look friend will kill me state will come soon hide behind back eye out and lamonda gossip ppl deaf believe it |
| Yannick to Unknown: | They won't do to u |

Your Affiant believes this chat was sent by Tollar to garner empathy for her as a means of intimidation through the deaf community. By advising others in their community that V-1's parent is unjustly accusing Tollar's boyfriend of a crime, she is attempting to influence others to reach out to V-1's parent.

22. Your Affiant knows that the individual that communicated with Yannick and Brown whose name appeared as "Unknown" is Tollar. Your Affiant met with both parents of the victim in this case on Saturday, February 1, 2014. Both parents still have access to Tollar's profile on Facebook as "friends." They were able to open the Facebook page of Cynthia Tollar, and navigate to the chat section, which display the communications listed in paragraphs 20-21 above. These chats were displayed on page in Tollar's Facebook account as messages sent by Tollar. Your Affiant viewed the chats with the individuals named Omdaz Brown and Yannick Johnson.

## CONCLUSION

23. Based on the aforementioned facts, your Affiant respectfully submits that there is probable cause to believe that evidence will be found in Tollar's Facebook account, User ID ctollar48, e-mail ctollar48@gmail.com and that those items will constitute evidence, fruits or

instrumentalities of the tampering with a witness in violation of Title 18 U.S.C. 1512. Your Affiant believes that evidence of further communications to others by Tollar will demonstrate Tollar's attempts to influence and intimidate V-1's parents about the case.

24. Based on your Affiant's knowledge, training and experience, and consultations with other law enforcement experts, your Affiant knows that data exchanged through Tollar's account can remain on the Facebook servers for an extended period of time. Your Affiant also knows that Facebook can extract the necessary data specific to the Tollar's accounts.

Based on the foregoing information, you Affiant has probable cause to believe that contraband, and evidence and fruits and instrumentalities of violations of 18 U.S.C. 1512, as set for herein in Attachment B, are currently location in the Facebook account specified in Attachment A in Attachment A, which are incorporated by reference as it fully set forth herein. I therefore respectfully request that a search warrant be issued authorizing a search of the account described above and in Attachment A for items found therein and specified in Attachment B.

_____
Detective Monique Pettett
United States Park Police

Subscribed and sworn to before me
this 19th day of February 2014

_____
Honorable Jillyn K. Schulze
United States Magistrate Judge

## ATTACHMENT A

## ITEMS TO BE SEARCHED

This warrant applies to information associated with the Facebook user Cynthia Brandy Tollar, User ID ctollar48, associated e-mail ctollar48@gmail.com that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered at 151 University Avenue, Palo Alto, California, 94301.

## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

**I.   Information to be disclosed by Facebook**

Facebook is required to disclose the following information to the government for the user ID listed in Attachment A:

(a) All contact information for Facebook user Cynthia Brandy Tollar, User ID ctollar48, e-mail ctollar48@gmail.com, including full name, user identification number, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers, a PDF of the current status of the profile page, and any individuals that have "defriended" her.

(b) All Photoprints, including all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

(c) All Neoprints, including profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past even postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(d) All other communications and messages made or received by the user, including all private messages and pending "Friend" requests;

(e) All IP logs, including all records of the IP addresses that logged into the account;

(f) All information about the user's access and use of Facebook Marketplace;

(g) The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

(h) All privacy settings and other account settings;

(i) All records pertaining to communications between Facebook and any person regarding the user of the user's Facebook account, including contacts with support services and records of actions taken.

**II.     Information to be seized by the government from Facebook**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, U.S.C 1512 involving Cynthia Brandy Tollar, Facebook user ID ctollar48 from 01/23/2014 to 02/01/2014, including, for each user ID identified on Attachment A, information pertaining to the following matters:

1. Any and all communications between Tollar and the Victim and the Victim's family and friends, using the Facebook account ctollar48, wherein Tollar is threatening the Victim's mother; any and all communications wherein Tollar is referring to the defendant in relation to the Victim's mother; any and all communications between Tollar and other parties wherein admissions are made as to threats of bodily harm to the Victim's mother and/or family members.

2. Communications that were transmitted through and between Facebook user ID ctollar48;

3. Registration data to include the original IP address that was used to create the Facebook account for user ID ctollar48, Interests listed and any other user or Facebook generated data created at the time the account was created;

4. Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts